ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN LEE | Criminal Indictment<br><br>No. 1:19CR395 |

THE GRAND JURY CHARGES THAT:

At times relevant to this Indictment:

### Background

1. Defendant JOHN LEE was a lawyer advising Hyundai Construction Equipment Americas Inc. (HCEA).

2. HCEA, headquartered in Norcross, Georgia, was a wholly-owned subsidiary of Hyundai Heavy Industries Co. Ltd. (HHI). HHI was a company headquartered in the Republic of Korea (South Korea).

3. The purpose of the Clean Air Act and its implementing regulations was to protect human health and the environment by, among other things, reducing emissions of pollutants from new motor vehicles.

4. Under the Clean Air Act, the U.S. Environmental Protection Agency (EPA) maintained emissions standards for new motor vehicles, including non-road compression-ignition (diesel) engines.

5. The EPA published regulations setting standards, known as Tier 4 requirements, for non-road diesel engines. These standards first applied in 2011 for the higher power category of engines—those with a power rating of less than 560 kilowatts through those of 130 kilowatts—and in 2012 for the lower power category of engines—those with a power rating of less than 130 kilowatts through those of 75 kilowatts. A kilowatt is a measure of engine power.

6. The EPA provided the Transition Program for Equipment Manufacturers (TPEM), which consisted of a number of regulatory flexibility provisions designed to give manufacturers some control over the transition process to the new Tier 4 standards.

7. A manufacturer participating in TPEM was required to select one of two ways to receive an allowance for nonconforming engines: the Percent of Production Allowance (POP) or the Small Volume Allowance (SVA). The allowances limited the number of engines *not* meeting Tier 4 standards (TPEM engines) that a manufacturer could import, sell, and produce for U.S.-directed sales. Once it used its allowances, the manufacturer was required to meet the Tier 4 standards without exception.

8. After each model year, a manufacturer participating in TPEM was required to file an annual report with the EPA that included the following information:

  a. The total number of units (engines) sold and produced in each of the preceding years for each power category, based on actual U.S.-directed production; and

  b. The percentages of U.S.-directed production that corresponded to the number of units (engines) in each power category and cumulative numbers and percentages (if applicable) of units with TPEM engines sold and produced for each power category.

9. On or about June 11, 2013, HCEA's consultant informed HCEA by letter that it was in violation of the TPEM regulations and could be fined. The consultant "strongly recommend[ed]" that HCEA "cease and desist" importing any further TPEM engines in the lower power category and notify the EPA.

10. On or about June 13, 2013, B.J.A., HCEA's North American Sales Manager and liaison to HHI, requested Defendant LEE's advice regarding the TPEM violations identified by the consultant.

11. On or about August 20, 2013, Defendant LEE sent B.J.A. a memorandum stating that HCEA could decide to either report its violation of the regulations to the EPA or not, but that if it chose not to report the violation, it would risk EPA learning about the violation anyway, which would likely result in a higher fine.

12. In or about March 2014, at a meeting at HCEA's headquarters, Defendant LEE instructed B.J.A. and S.K.L., who had just moved to the

United States from South Korea to replace B.J.A. as Sales Manager, to use their personal email accounts to communicate about TPEM matters in order to make it difficult for the EPA to obtain the emails. B.J.A. and S.K.L. followed these instructions.

13. On or about March 30, 2014, S.K.L. sent an email from his personal email account to Y.S.K.'s and K.J.H.'s personal email accounts attaching data related to preparing the proposed 2013 annual report to the EPA.

14. On or about March 30, 2014, S.K.L. used his personal email account to send the proposed report to Defendant LEE's personal email account. The report did not disclose the violation of the regulations.

15. On or about March 30, 2014, Defendant LEE sent an email from his personal email account to S.K.L.'s personal email account approving the filing of HCEA's 2013 annual report.

16. On or about March 31, 2014, S.K.L. sent an email from his personal email account to B.J.A.'s personal email account containing HCEA's 2013 annual report to the EPA that Defendant LEE had approved.

17. On or about March 31, 2014, B.J.A. submitted HCEA's 2013 annual report to EPA.

## Count One

(Perjury - 18 U.S.C. § 1623)

18. The factual allegations set forth in paragraphs 1 through 17 of this Indictment are incorporated herein.

19. On or about April 4, 2017, in the Northern District of Georgia, the Defendant, JOHN LEE, while under oath and testifying in a proceeding before a Grand Jury of the United States in the Northern District of Georgia, did knowingly make a false material declaration, that is to say, in response to a question about advice he gave to HCEA about TPEM violations, he gave the following underlined false testimony:

> Q. So the part where he says, we're not saying you provided advice as to every one of these issues. Where he specifically says he's not saying you provided that advice. Which part of that is misleading?
>
> A. To be clear, the company's intention to waive privilege regarding any advice that you provided to HCEA. You provided? In 2013 and '14 regarding the TPEM program. The decision to switch from SVA to the POP program. I never advised them about switching from SVA to POP program. The decision not to disclose alleged violation of the SVA program. I never gave any advice about the decision not to disclose the alleged violation of the SVA program. <u>And the filing of 2013 TPEM report in March 2014, I never gave any advice about filing of the 2013 TPEM report in March 2014</u>.
>
> Q. Are you sure about that, Mr. Lee?
>
> A. Yes.
>
> \* \* \*
>
> Q. And it appears that you're saying you did not receive a copy of the 2013 annual report in March of 2014; is that correct?
>
> A. I don't -- I don't remember ever receiving it until -- I don't remember ever seeing it until January of 2016 when [M.B.] showed it to me.

Q. Did you approve the filing of that report?

A. <u>No.</u>

\*\*

Q. Did you tell [S.K.L.] to please submit that report on March 30th of 2014?

A. <u>No.</u> I don't remember ever talking to [S.K.L.] about filing a report other than making sure he has the backups when he -- I had one meeting with him and [B.J.A.]. And I may have had one subsequent meeting with [S.K.L.]. But I don't -- I don't advise people to file something or not file something. What I did advise him about was make sure you have the backups if you get -- in case you get audited.

All in violation of Title 18, United States Code, Section 1623.

## Count Two
(Perjury – 18 U.S.C. § 1623)

20. The factual allegations set forth in paragraphs 1 through 17 of this Indictment are incorporated herein.

21. On or about April 4, 2017, in the Northern District of Georgia, the Defendant, JOHN LEE, while under oath and testifying in a proceeding before a Grand Jury of the United States in the Northern District of Georgia, did knowingly make a false material declaration, that is to say, he gave the following underlined false testimony:

Q. Did you ever discuss using personal email addresses with John Lee, excuse me, with [S.K.L.] or [B.J.A.]?

A. <u>No</u>.

Q. Did you ever tell them that you they should use their personal email address to discuss the TPEM issues in the March 2014 time frame?

A. <u>No</u>.

Q. When you were at the meeting with John, with, excuse me, [S.K.L.] and [B.J.A.], did you tell them to use their personal email accounts because it would be harder for the EPA to get copies of those emails?

A. <u>No</u>.

All in violation of Title 18, United States Code, Section 1623.

## Count Three
(Perjury – 18 U.S.C. § 1623)

22. The factual allegations set forth in paragraphs 1 through 17 of this Indictment are incorporated herein.

23. On or about April 4, 2017, in the Northern District of Georgia, the Defendant, JOHN LEE, while under oath and testifying in a proceeding before a Grand Jury of the United States in the Northern District of Georgia, did knowingly make a false material declaration, that is to say, he gave the following underlined false testimony:

Q. Did you receive any emails in March of 2014 on your personal email account?

A. No.

Q. Related to this.

A. <u>No.</u>

All in violation of Title 18, United States Code, Section 1623.

## Count Four
(Obstruction of Justice - 18 U.S.C. § 1503)

24. The factual allegations set forth in paragraphs 1 through 17 of this Indictment are incorporated herein.

25. On or about April 4, 2017, in the Northern District of Georgia, the defendant, JOHN LEE, did corruptly influence, obstruct, and impede and endeavor to influence, obstruct, and impede the due administration of justice in a federal grand jury in the Northern District of Georgia, by not producing emails relevant to the grand jury's investigation in response to a grand jury

subpoena served on him for email, in violation of Title 18, United States Code, Section 1503.

A  **True**  BILL

_____
FOREPERSON

JEAN E. WILLIAMS
*Deputy Assistant Attorney General*
*Environment and Natural Resources Division*

NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930

KRISHNA S. DIGHE
*Senior Counsel, Environmental Crimes Section*
Michigan Bar No. P45376

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181